```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

ROSE QUINLAN,                   )
as Administratrix of the        )
Estate of JAMES QUINLAN,        )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil Action No. 04-485
JOHN J. KANE REGIONAL CENTERS-  )
GLEN HAZEL,                     )
                                )
          Defendant.            )

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss Third Amended Complaint (Docket No. 11) be denied.

### II.  REPORT

Presently before this Court for disposition is a motion to dismiss the Third Amended Complaint brought by defendant John J. Kane Regional Centers - Glen Hazel ("the Kane Center").

Plaintiff, Rose Quinlan, as the administratrix of the estate of James Quinlan, commenced this action under 42 U.S.C. § 1983 ("§ 1983"), following the death of her father, who was a resident of the Kane Center.

According to the Third Amended Complaint, Kane Center is a long-term care, skilled nursing facility where James Quinlan

began residing in February of 2002.[1]  Plaintiff alleges that her father had numerous medical conditions, that he was required to have a feeding tube, and that he was totally dependent for all activities of daily living.[2]  On March 13, 2002, Mr. Quinlan was apparently found by employees of the Kane Center in a hallway suffering from respiratory distress.[3]  Plaintiff alleges that after moving Mr. Quinlan to his room the employees attempted to resuscitate him by mechanically ventilating him and by "two sequences of chest compressions."[4]  A bolus of food was found to have been obstructing Mr. Quinlan's airway and ultimately caused his death.[5]

Plaintiff alleges that defendant and its employees had a duty to ensure that all its employees were competent to provide care and to comply with the provisions of the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") contained therein, 42 U.S.C. § 1396r, as

---

[1]   Third Amended Complaint ¶¶ 8, 9, 12[b] (Docket No. 9).  We note here that the paragraphs of the Third Amended Complaint are not in sequence and that the "b" in brackets following a paragraph number indicates that it is the second paragraph of that number.

[2]   Id. at ¶ 12[b].

[3]   Id. at ¶ 14[b].

[4]   Id. at ¶ 16.

[5]   Id. at ¶ 17, 18.

well as the implementing regulations found at 42 C.F.R. § 483, et seq.[6]

Plaintiff filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on or about December 3, 2003, bringing claims for wrongful death (Count I), survival (Count II), and a civil rights claim under § 1983 (Count III).[7] An amended complaint was filed on February 26, 2004, and a second amended complaint was submitted on February 27, 2004, in which plaintiff brought a single cause of action pursuant to § 1983.[8] On March 29, 2004, defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1443 and subsequently filed a motion to dismiss arguing that the complaint should be dismissed as plaintiff has not sufficiently alleged a deprivation of a right secured by the Constitution.

The undersigned subsequently issued a Report and Recommendation in which it was found that because plaintiff had failed to identify the particular provisions of the FNHRA under

---

[6] Id. at ¶¶ 20, 21. It appears that Congress enacted the FNHRA as part of the Omnibus Budget Reconciliation Act of 1987 ("OBRA"). OBRA revised the regulations of nursing homes subject to Medicare and Medicaid, subchapters XVIII and XIX of the Social Security Act, respectively. 42 U.S.C. §1395i-3 (Medicare) and 42 U.S.C. §1396r (Medicaid). Thus, the latter section, upon which plaintiff relies, is often referred to as the "Medicaid Act." See Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 182 (3d Cir. 2004).

[7] See Notice of Removal ¶¶ 6, 7. A copy of the original Complaint is attached to the Notice of Removal as Exhibit B.

[8] See Notice of Removal ¶ 1 and Exhibit A attached thereto.

which she was proceeding the Court was unable to ascertain whether she had asserted the violation of a federal right.[9] It was therefore recommended that plaintiff be given ten days to identify the specific provisions of the FNHRA that were allegedly violated. The Report and Recommendation was thereafter adopted as the opinion of the Court and on February 14, 2005, plaintiff filed a Third Amended Complaint in which she has identified ten sections of the FNHRA under which she claims to have a cause of action.[10]

Defendant has now filed another motion to dismiss in which it argues that the Third Amended Complaint submitted by plaintiff fails to cure the previously found defects as plaintiff has failed to point to any clear and unambiguous rights-creating language in the cited statute provisions and that no such language, in fact, exists.

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991). The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences. Schuylkill Energy

---

[9]   See Report and Recommendation (Docket No. 8).

[10]   See Docket Nos. 9, 10.

Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997). Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted. Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiff will prevail in the end but only whether he should be entitled to offer evidence in support of his claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

As discussed in the previous Report and Recommendation, under § 1983, liability will be imposed on anyone who, acting under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Supreme Court of the United States has held that § 1983 protection extends to violations of federal statutes as well as the Constitution. Maine v. Thiboutot, 484 U.S. 1, 4 (1980). In order to have a cause of action under § 1983, however, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." Blessing v. Freestone, 520 U.S. 329, 340 (1997)("Blessing").

To determine whether a particular statutory provision gives rise to a federal right Courts have applied what has become known as the "Blessing test":

> First, Congress must have intended that the
> provision in question benefit the plaintiff.

5

> *Wright [v. Roanoke Redevelopment and Housing Authority]*, 479 U.S. [418], 430 [(1987)].... Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431-432.... Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Wilder [v. Virginia Hospital Assn.*, 496 U.S. 498,] 510-511 [(1990)]....

Blessing, 520 U.S. at 340-41. The Supreme Court subsequently made clear, however, that merely because a plaintiff falls within the zone of interests that the statute is intended to protect it does not permit plaintiffs to enforce the statute under § 1983. Gonzaga University v. Doe, 536 U.S. 273, 283 (2002)("Gonzaga"). Rather, the plaintiff must show that Congress intended to create an "unambiguously conferred right" by pointing to clear and unambiguous "rights-creating language." Id. at 283, 290.

As found by the Court of Appeals for the Third Circuit, to constitute "rights-creating language," the relevant portion of the statute must clearly bestow an "individual entitlement" and be "phrased in terms of the persons benefitted" rather than merely speaking in terms of institutional policy and practice. Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 187-88 (3d Cir. 2004)("Sabree"), quoting Gonzaga, 536 U.S. at 287, Blessing, 520 U.S. at 343, and Cannon v. University of Chicago, 441 U.S. 677, 692 n.13 (1979).

In the instant case, plaintiff first seeks to impose liability on defendant under provisions of the Medicaid Act in which requirements for nursing facilities relating to the provision of services are set forth. 42 U.S.C. § 1396r (b)(1)(A), (2)(A), (3)(A), (4)(A), (4)(B), (4)(C). Specifically, those provisions provide:

> **(b) Requirements relating to provision of services**
>
> **(1) Quality of Life**
>
> **(A) In general**
>
> A nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident.
>
> **(2) Scope of services and activities under plan of care**
>
> A nursing facility must provide services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care which--
>
> **(A)** describes the medical, nursing, and psychosocial needs of the resident and how such needs will be met ....
>
> **(3) Residents' assessment**
>
> **(A) Requirement**
>
> A nursing facility must conduct a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity, which assessment--

> **(i)** describes the resident's capability to perform daily life functions and significant impairments in functional capacity;
>
> \*   \*   \*
>
> **(iv)** includes the identification of medical problems.
>
> \*   \*   \*

**(4) Provision of services and activities**

**(A) In general**

> To the extent needed to fulfill all plans of care described in paragraph (2), a nursing facility must provide (or arrange for the provision of)--
>
> \*   \*   \*
>
> **(iv)** dietary services that assure that the meals meet the daily nutritional and special dietary needs of each resident.
>
> \*   \*   \*

**(B) Qualified persons providing services**

> Services described in clause[] ... (iv) ... of subparagraph (A) must be provided by qualified persons in accordance with each resident's written plan of care.

**(C) Required nursing care; facility waivers**

> **(i) General requirements**
> With respect to nursing facility services provided on or after October 1, 1990, a nursing facility--
>
> > **(I)** ... must provide 24-hour licenced nursing services which are sufficient to meet the nursing need of its residents, and,

> **(II)** ... must use the services of a registered professional nurse for at least 8 consecutive hours a day, 7 days a week.

While at first blush, it would appear that these provisions speak only to the nursing care facilities and the services that they must provide, they are not unlike the provisions of the Medicaid Act at issue in <u>Sabree</u>, 367 F.3d at 180, which the Court of Appeals for the Third Circuit found unambiguously conferred rights vindicable under § 1983. Specifically, the provisions at issue in <u>Sabree</u>, which fall under the heading "State plans for medical assistance," provide that:

> A State plan for medical assistance must ... provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals ....

42 U.S.C. § 1396a(a)(8).

> A State plan for medical assistance must ... provide ... for making medical assistance available, ... to ... all [eligible] individuals ....

42 U.S.C. § 1396a(a)(10).

> For purposes of this title [42 U.S.C. §§ 1396 et seq.] ... [t]he term "medical assistance" means payment of part or all of the cost of the following care and services ... for individuals ... who are [eligible:] ... services in an intermediate care facility for the mentally retarded....

42 U.S.C. § 1396d(a)(15).  Comparing the language in these provisions to that found in Titles VI and IX, which the Gonzaga Court had identified as exemplars of rights-creating language, the Third Circuit found that, "it was difficult, if not impossible as a linguistic matter, to distinguish the import of the relevant Title XIX language -'A State plan must provide'- from the 'No person shall' language of Titles VI and IX."[11] Sabree, 367 F.3d at 190.  In so finding, the Court relied on the fact that, like Titles VI and IX, Title XIX was couched in "mandatory rather than precatory" terms and that because the relevant Title XIX provisions enumerate the entitlements available to "all eligible individuals," the "individual focus" of Sections 1396a(a)(10), 1396d(a)(15), and 1396a(a)(8) was "unmistakable."  Id.  Indeed, the Court specifically found that the provisions did not focus on the entity being regulated but rather revolved around the individuals being protected.  Id.  Finally, the Court noted that because the statutory references to the individual did not appear "in the context of describing the type of 'policy or practice' that triggers a funding prohibition"

---

[11]   The relevant portion of Title VI provides that: "No person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. 42 U.S.C. § 2000d.  Similarly, Title IX provides: "No person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

10

as had been a concern in <u>Gonzaga</u>, Congress clearly conferred specific entitlements on individuals.  <u>Id.</u>

Here, like in <u>Sabree</u>, sections 1396r(b)(1)(A), (2)(A), (3)(A), and (4)(A)(B)&(C) of the Medicaid Act are framed in mandatory rather than precatory terms indicating what services a nursing facility *must* provide and that they *must* be provided by qualified persons.  As well, these provisions enumerate services to be provided to *each resident* which the Court in <u>Sabree</u> found suggested a focus on the individuals being protected rather than the entity being regulated.  Indeed, the references to the individual do not appear "in the context of describing the type of 'policy or practice' that triggers a funding prohibition" as had been a concern in <u>Gonzaga</u> and <u>Sabree</u>.  Thus, under <u>Sabree</u>, it appears Congress intended to confer the right to support a cause of action.[12]  See <u>Rolland v. Romney</u>, 318 F.3d 42, 52-53, 53 n.10 (1st Cir. 2003) (Noting that "rights-creating" language is generally prevalent in the NHRA and that sections 1396(b)(1),(2) & (3), in particular, clearly identify those it seeks to protect and "goes on to endow them with particular rights, utilizing 'rights-creating' language.").  Cf. <u>In re NYAHSA Litigation</u>, 318 F. Supp. 2d 30, 40 (N.D.N.Y. 2004), quoting <u>Concourse</u>

---

[12]   Although defendant has argued that plaintiff's Third Amended Complaint should be dismissed for the reasons set forth in our earlier Report and Recommendation and the cases cited therein, including <u>Sabree</u>, defendant has not discussed any of the cited cases and, more notably, has not discussed or attempted to distinguish the provisions at issue in <u>Sabree</u> from those at issue here.

11

Rehabilitation & Nursing Center, Inc. v. Whalen, 249 F.3d 136, 144 (2d Cir. 2001)(Finding that providers of nursing home services did not have a federally enforceable right under § 1396r "because it was 'obviously intended to benefit Medicaid beneficiaries, not providers.'")

Plaintiff also brings suit under 42 U.S.C. § 1396r(c)(2)(E) of the Medicaid Act which is included in the section setting forth the requirements for nursing care facilities as they relate to residents' rights. Specifically, subsection (2)(E) provides:

> **(2) Transfer and discharge rights**
>
> \*   \*   \*
>
> **(E) Information respecting advance directives**
>
> A nursing facility must comply with the requirements of section 1396a(w) of this title (relating to maintaining written policies and procedures respecting advance directives).

Section 1396a(w), in turn, provides that:

> **(w) Maintenance of written policies and procedures respecting advance directives**
>
> **(1)** For purposes of subsection ... 1396r(c)(2)(E) of this title, the requirement of this subsection is that the provider or organization (as the case may be) maintain written policies and procedures with respect to all adult individuals receiving medical care by or through the provider or organization-
>
> **(A)** to provide written information to each such individual concerning-

12

>    **(i)** an individual's rights under State law (whether statutory or as recognized by the courts of the State) to make decisions concerning such medical care, including the right to accept or refuse medical or surgical treatment and the right to formulate advance directives ..., and
>
>    **(ii)** the provider's or organization's written policies respecting the implementation of such rights;
>
>    **(B)** to document in the individual's medical records whether or not the individual has executed an advance directive;
>
>    **(C)** not to condition the provision of care or otherwise discriminate against an individual based on whether or not the individual has executed an advance directive;
>
>    **(D)** to ensure compliance with State law (whether statutory or as recognized by the courts of the State) respecting advance directives; and
>
>    **(E)** to provide (individually or with others) for education of staff and community on issues concerning advance directives.

With respect to § 1396(c)(2)(E), it appears that it, too, is framed in mandatory terms describing a service that nursing facilities *must* provide.  Further, although §1396(c)(2)(E) does not itself state that each resident is to be provided with services relating to advance directives it nevertheless falls under the section of the statute governing residents' rights and, thus, appears to provide an even more compelling basis for finding that it affords plaintiff an enforceable right.  Indeed, we note, as plaintiff has done, that the legislative history regarding this section provides that:

13

> (c) Requirements relating to residents' rights.-- The Committee amendment would, for purposes of compliance and enforcement, elevate residents' rights to the same level as staffing and other requirements critical to the quality of care and quality of life of nursing facility residents.  Under the amendment, residents' rights fall into five broad categories: (1) general rights (e.g., freedom of choice of physician, freedom from restraints, privacy, confidentiality, least restrictive environment, grievances, and participation in resident and family groups); (2) transfer and discharge rights; (3) access and visitation rights; (4) equal access to quality care; and (5) admissions policy.  The overriding purpose of these resident rights requirements is to improve the quality of care and the quality of life for all nursing facility residents, whether or not eligible for Medicaid.  The Committee expects that they will be strictly observed and vigorously enforced.

H.R. Rep. No. 100-391 (I), at 457-58 (1987).  Because the purpose of the residents' rights section is to benefit all nursing facility residents, even those not eligible for medicaid, it appears that, like in Sabree, the focus is on the individual being protected rather than the nursing facility itself.  As well, as the Third Circuit also found in Sabree, the references to the individual are not in the context of describing a policy or practice upon which funding depends which further suggests that Congress intended to confer an enforceable right under § 1396(c)(2)(E).

While we recognize that § 1396a(w) falls outside the residents' rights section of the statute, § 1396r(c)(2)(E), which

does fall under that section, nevertheless states that nursing facilities "must" comply with § 1396a(w)'s requirements. Moreover, § 1396a(w) enumerates entitlements available to all individuals receiving medical care without reference to policies or practices upon which funding is dependent. In this manner, § 1396a(w) appears to fall squarely under <u>Sabree</u> as well and requires a finding that a right has been conferred.

Plaintiff also seeks to bring a cause of action under 42 U.S.C. §§ 1396r(d)(1)(A) & (C). Those sections provide as follows:

> **(d) Requirements relating to administration and other matters**
>
> > **(1) Administration**
> >
> > > **(A) In general**
> > >
> > > > A nursing facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident ....
> > >
> > > **(C) Nursing facility administrator**
> > >
> > > > The administrator of a nursing facility must meet standards established by the Secretary ....

In our view, these provisions, like those previously discussed, are sufficiently similar to those at issue in <u>Sabree</u> to confer an enforceable right as well. Indeed, like those in <u>Sabree</u>, which describe the manner in which applications for medical assistance

were to be administered, these provisions dictate, in mandatory terms, the manner in which a nursing facility is to be administered and speaks in terms of benefitting the individual rather than the nursing facility.

Finally, we note that none of the provisions relied upon by plaintiff is so vague and amorphous so as to strain judicial enforcement.  <u>Blessing</u>, 520 U.S. at 340-41.  Indeed, each of these statutory provisions and accompanying regulations clearly sets forth the service to be provided.  As such, it appears that all three of the <u>Blessing</u> factors have been satisfied thereby giving rise to a federal right.[13]

For these reasons, it is recommended that Defendant's Motion to Dismiss Third Amended Complaint (Docket No. 11) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have

---

[13] Even where a plaintiff has demonstrated that a federal statute creates an individual right, however, it is only a rebuttable presumption.  Recourse to § 1983 will still be foreclosed where Congress expressly forbids a remedy under § 1983 or where it did so impliedly "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  <u>Blessing</u>, 520 U.S. at 341.  <u>See</u> <u>South Camden Citizens in Action v. New Jersey Department of Environmental Protection</u>, 274 F.3d 771, 780 (3d Cir. 2001), <u>cert</u>. <u>denied</u>, 536 U.S. 939 (2002).  Defendant, however, has not addressed this issue in its motion but has merely argued that the provisions relied on by plaintiff do not create an enforceable right in the first instance.

seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                          Respectfully submitted,

                                          /s/   Amy Reynolds Hay
                                          AMY REYNOLDS HAY
                                          United States Magistrate Judge

Dated: 7 November, 2005

cc:   Gregory G. Paul, Esquire
      Robert F. Daley, Esquire
      Peirce, Raimond & Coulter, P.C.
      707 Grant Street
      2500 Gulf Tower
      Pittsburgh, PA 15219

      Donald H. Smith, Esquire
      20 Stanwix Street
      4th Floor
      Pittsburgh, PA 15222